IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03426-WYD-KMT

HUSAI JIMENEZ, on his own behalf and on behalf of all others similarly situated,

    Plaintiff,

v.

DENVER RESTAURANT VENTURE, LLC, d/b/a DIEGO'S, and
TONY TERRONES,

    Defendants.

_____

**ORDER**
_____

I.    INTRODUCTION & BACKGROUND

THIS MATTER is before the Court on Defendants, Denver Restaurant Venture, LLC's, d/b/a Diego's, and Tony Terrones' ("Defendants") Motion for Summary Judgment (ECF No. 15), filed February 24, 2015.[1]  In this motion, Defendants assert that Plaintiff, Husai Jimenez ("H. Jimenez") falls squarely within the executive exemption to the Fair Labor Standards Act ("FLSA") and is, therefore, not entitled to overtime pay under the statute.  Plaintiffs, H. Jimenez, Nemias Jimenez ("N. Jimenez"), and Francisco Bruno ("Bruno") filed a Response (ECF No. 17) on March 16, 2015.  In their Response, Plaintiffs assert that they did not exercise the managerial duties required by the executive exemption.  On March 30, 2015, Defendants filed a Reply (ECF No. 21), in which they assert that the material and genuine undisputed facts establish, at least as to H. Jimenez, that the FLSA's executive exemption applies in this case and precludes the payment of

---

[1] I note that Defendants' Motion for Summary Judgment (ECF No. 15) is only directed at Plaintiff, H. Jimenez.

overtime.[2]

Prior to Defendants' filing of the instant motion, H. Jimenez filed a Motion for Conditional Collective Action Certification ("Certification Motion") (ECF No. 5). In Defendants' Response (ECF No. 14) to the Certification Motion, Defendants indicated that they would be filing the instant motion, which, if granted, would render the Certification Motion moot. For that reason, Defendants requested a temporary stay on the Certification Motion pending the Court's ruling on the instant motion. In his Reply (ECF No. 16), H. Jimenez indicated that he did not object to Defendants' request. The Court agrees with the proposition and proceeds accordingly.

By way of background, this case arises out of H. Jimenez's overtime claim pursuant to the FLSA. H. Jimenez began his employment with Defendants on April 23, 2012. ECF No. 15, p. 3 at ¶ 4. At the time of his hire, H. Jimenez worked in Defendants' kitchen as a cook and was paid at the hourly rate of $12.00. *Id.* On April 30, 2012, Defendants assert that H. Jimenez was promoted to Kitchen Manager and was given a salary of $38,500 per year. As Kitchen Manager, H. Jimenez also became eligible for paid vacations and bonuses. *Id.* When H. Jimenez was employed as an hourly employee between April 23 and April 29, 2012, he worked 45.63 hours and was paid

---

[2] Defendants argue in their Reply that the second affidavits from Nemias Jimenez and Francisco Bruno, and affidavits from Husai Jimenez and Raymundo Tehuitzil are conclusory, unsupported by any documentary evidence, and directly contrary to Diego's written time records. Defendants also assert that the second affidavits of Husai Jimenez and Raymundo Tehuitzil are inconsistent with their first affidavits. In ruling on the instant motion, the Court has not considered the affidavits of Nemias Jimenez and Francisco Bruno because the motion is only directed at Husai Jimenez. In considering the affidavits of Husai Jimenez and Raymundo Tehuitzil, I note that they are not inconsistent with the requirements set forth in Fed. R. Civ. P. 56(c)(4), *i.e.*, they must contain personal knowledge, admissible facts, and show that the affiant is competent to testify on the matters stated.

$101.34 for 5.63 hours of overtime.  *Id.*  In 2013, H. Jimenez was paid $42,718 in salary and bonuses.  *Id.*  In 2014, H. Jimenez was paid a base salary of $52,000 plus bonuses before he resigned on October 30, 2014.  *Id.*  On December 19, 2014, H. Jimenez filed this action alleging that Defendants violated the FLSA by refusing to pay overtime premiums.  On January 26, 2015, N. Jimenez and Bruno, who were also employed by Defendants, expressed their desire and consent to join the above-captioned case against Defendants.  In the instant motion, Defendants move for summary judgment asserting, at least as to H. Jimenez, that the FLSA's exemption for executive employees applies in this case and precludes the payment of overtime.  I conclude, for the reasons stated below, that Defendants' motion is denied.

II.   ANALYSIS

    A.   Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190.  "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted). When applying the summary judgment standard, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* (internal quotation marks omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B.    <u>Exemption for Executive Employees</u>

In their motion, Defendants assert that H. Jimenez fell within the FLSA's exemption for executive employees after becoming Kitchen Manager, and thus was no longer overtime eligible. I now turn to my analysis of whether H. Jimenez fell within the exemption.

Under the FLSA, employers are required to pay employees overtime for hours worked in excess of 40 in a workweek at a rate not less than one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(2); *see also Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1228 (10th Cir. 2008). However, "any employee employed in a bona fide executive . . . capacity" is exempt from this requirement. 29 U.S.C. § 213(a)(1); *see also Archuleta,* 543 F.3d at 1228. "Exemptions to the FLSA are . . . narrowly construed." *Id.* at 1233. "An employer must prove that the employee is exempt by 'clear and affirmative' evidence." *Id.* "[W]hether an employee falls within the exclusion for 'executives' under

29 U.S.C. § 213(a)(1) is a factual question." *Id.* (quoting *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 712, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)).

Under the federal regulations, an employee falls under the exemption for executives if: (1) the employee is compensated on a salary basis at a rate of not less than $455 per week; (2) the employee's primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) the employee customarily and regularly directs the work of two or more other employees; and (4) the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

### 1. Compensation on a Salary Basis

For the exemption to apply, Defendants must first show that H. Jimenez was compensated on a salary basis at a rate of not less than $455 per week. Defendants contend that H. Jimenez was a salaried employee who was paid in excess of $455 per week. After being promoted to Kitchen Manager in April 2012, Defendants explain that H. Jimenez was paid a salary of $38,500, or $730.48 per week and became eligible for paid vacation and bonuses. Defendants further assert that H. Jimenez received $42,718 in salary and bonuses in 2013. Between January 1, 2014 and October 30, 2014, Defendants assert that H. Jimenez was paid $41,509.61 in salary and bonuses based upon an annual salary of $52,000. Plaintiffs do not contest these facts and do not assert that deductions from H. Jimenez's predetermined compensation were made, under 29

C.F.R. § 541.602(a),[3] that would preclude a determination that he was paid on a salary basis. Thus, Defendants have satisfied the first element of the analysis.

### 2.     Primary Duty

Next, Defendants must show that H. Jimenez's primary duty was management. Defendants contend that H. Jimenez's primary duty was management after becoming Kitchen Manager.

Under the federal regulations, primary duty means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "[T]he primary duty inquiry presents a question of fact." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012). "A fact-sensitive inquiry is necessary, but [i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." *Dep't of Labor v. City of Sapulpa, Okl.*, 30 F.3d 1285, 1287 (10th Cir. 1994) (internal quotation marks omitted). The regulations provide that "[t]ime alone, however, is not the sole test, and nothing . . . requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700(b). The regulations also require consideration of "the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other

---

[3] Under the first element of the exemption analysis, "[a]n employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. § 541.602(a).

employees for the kind of nonexempt work performed by the supervisor." 29 C.F.R. § 541.700(a); *Maestas*, 664 F.3d at 827.

Moreover, the regulations classify the following activities as managerial:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Here, Defendants contend that H. Jimenez's primary duty was management of Defendants' kitchen and kitchen staff after being promoted to Kitchen Manager. Defendants explain that H. Jimenez's managerial duties were significantly more important than his non-exempt duties. For instance, Defendants assert that while H. Jimenez spent the majority of his time engaged in management duties, the few hours a day that he spent cooking were also spent training new employees and supervising other kitchen staff. Defendants further assert that the majority of H. Jimenez's time was spent on his duties as Kitchen Manager and that he was given the freedom and autonomy to manage the kitchen and kitchen staff. Defendants explain that H. Jimenez spent approximately 25 percent of his time cooking and training new cooks. Defendants state that the rest of H. Jimenez's time was spent managing the kitchen and kitchen staff by scheduling, supervising and directing employees, planning and dividing work among

employees, ordering food and products, training employees, interviewing and hiring new employees, and ordering food and equipment.

Defendants also contend that H. Jimenez was given complete freedom to staff, manage, and oversee the kitchen and kitchen staff, with the exception of requests to control labor and food costs. Defendants state that higher level management did not interfere with H. Jimenez's management. Defendants also state that H. Jimenez was entrusted with the responsibility to decide and control orders, receive deliveries, and act as the decision-maker regarding products and services offered by U.S. Foods. Finally, Defendants contend that H. Jimenez's salary and bonuses were significantly higher than the non-exempt employees that he supervised and managed.

In response, Plaintiffs assert that H. Jimenez's primary duty was to cook and that he was not engaged in management of the kitchen. Plaintiffs explain that as a cook H. Jimenez would prepare and cook food, and clean the kitchen. Specifically, H. Jimenez states in his Second Affidavit (ECF No. 17-1) that he spent 95 percent of his work hours cooking food, preparing food for later orders, putting food on plates, cleaning the kitchen, and washing dishes on occasion. He further states that the other five percent of his work was spent doing U.S. Foods orders when Mr. Anderson was Kitchen Manager. H. Jimenez explains that he was assigned the task of ordering from U.S. Foods during a three month period when there was no Kitchen Manager after Mr. Castillo left toward the end of 2012. H. Jimenez then explains that he retained this assignment when Mr. Anderson became Kitchen Manager until May 5, 2014. H. Jimenez states that he and Mr. Anderson would alternate ordering. When H. Jimenez did the ordering, H. Jimenez

states that Mr. Terrones, Diego's General Manager, would check the orders and often identify corrections.   While Raymundo Tehuitzil was Kitchen Manager, between May 5, 2014 and October of 2014, H. Jimenez states that he did not do U.S. Food orders and spent 100 percent of his time cooking and cleaning.

H. Jimenez further states in his Second Affidavit that the Kitchen Manager would apportion work among employees and that the more experienced employees were asked to assist in training new employees.   H. Jimenez contends that because he spent so much time in the kitchen, Kitchen Managers would sometimes ask him which employee was best at certain kitchen tasks.   H. Jimenez states that the Kitchen Manager would then assign employees to various posts.   Additionally, H. Jimenez states that he was only assigned to interview prospective employees when Mr. Anderson was Kitchen Manager because Mr. Anderson did not speak Spanish.   Otherwise, H. Jimenez asserts that Mr. Tehuitzil and Mr. Anderson conducted interviews.   H. Jimenez also asserts that he had nothing to do with setting or adjusting the hours or pay rates of employees; did not maintain production or sales records for use in supervision or control, did not plan the work that needed to be done; did not monitor or implement legal compliance measures, or provide safety and security for employees on the property; and did not have the authority discipline employees.   Finally, Plaintiffs contend that H. Jimenez's wages were commensurate with the wages of other non-exempt employees.

Based on the foregoing, I find that genuine issues of material fact exist as to whether H. Jimenez's primary duty was management.

### 3. Direction of Work

Under the third element, Defendants must show that H. Jimenez customarily and regularly directed the work of two or more other employees. Defendants assert that H. Jimenez customarily and regularly managed and directed the work of 12 to 14 employees. Defendants explain that the affidavits of five employees that worked with or were supervised by H. Jimenez attest to the fact that H. Jimenez managed and directed their work. These employees explain that H. Jimenez set their schedules, assigned them tasks, provided them training, and supervised their work on a daily basis. In response, Plaintiffs state that H. Jimenez only supervised one other cook and a dishwasher in isolated instances. Plaintiffs further state that H. Jimenez did not set employee work schedules, assign work to employees, or determine the techniques used in the kitchen. Specifically, H. Jimenez states in his Second Affidavit that he had nothing to do with setting or adjusting the hours of employees, did not assign tasks or apportion work, and assisted with training when asked by the Kitchen Manager. H. Jimenez also states that he occasionally supervised one other cook and a dishwasher, but only when Mr. Anderson left early. H. Jimenez further states that he did not supervise anyone when Mr. Tehuitzil was Kitchen Manager because Mr. Tehuitzil did not leave before he did.

Based on these facts, I find that there are genuine issues of material fact regarding whether H. Jimenez customarily and regularly directed the work of two or more employees.

### 4. Authority to Hire or Fire

Finally, Defendants must demonstrate that H. Jimenez had the authority to hire or fire other employees or that his suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight. Defendants assert that H. Jimenez, as Kitchen Manager, was given full authority to hire, fire, and set salaries of the kitchen staff. Mr. Terrones states that all hiring and firing of kitchen staff was performed by the Kitchen Managers, including H. Jimenez. Moreover, Defendants assert that employees Juan Castillo, Hugo Armendariz, Maria Sanchez, and Sally Pineda all state that they were interviewed and hired by H. Jimenez while he was employed as Kitchen Manager.

In response, Plaintiffs assert that H. Jimenez did not hire new kitchen employees or set employee wage rates. Plaintiffs also assert that H. Jimenez did not have or exercise the authority to discipline employees. Specifically, J. Jimenez states in his Second Affidavit that he only interviewed and translated for Spanish speaking prospective kitchen employees because Kitchen Manager William Anderson did not speak Spanish. Otherwise, H. Jimenez asserts that Mr. Tehuitzil and Mr. Anderson conducted interviews. H. Jimenez further states that he had nothing to do with setting or adjusting pay rates of employees. Moreover, according to Raymundo Tehuitzil, H. Jimenez did not have anything to do with hiring while Mr. Tehuitzil was employed as Kitchen Manager between May 5, 2014 and October 30, 2014.

Based on the foregoing, I find that there are genuine issues of material fact regarding whether H. Jimenez had the authority to hire or fire other employees or that his

...

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight. Having determined that genuine issues of material fact exist as aforementioned, I find it appropriate to deny Defendants' Motion for Summary Judgement.

    C.    <u>H. Jimenez's Motion for Conditional Collective Action Certification</u>

I now briefly address the status of H. Jimenez's Certification Motion (ECF No. 5). In accordance with the parties' agreement to temporarily stay the Certification Motion pending the Court's ruling on the instant motion, I note that the Certification Motion is now ripe for review. Accordingly, a hearing concerning H. Jimenez's Certification Motion (ECF No. 5) is set for Wednesday, September 23, 2015, at 2:30 p.m.

III.    <u>CONCLUSION</u>

Therefore, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 15) is **DENIED**. It is

FURTHER ORDERED that a hearing concerning H. Jimenez's Motion for Conditional Collective Action Certification (ECF No. 5) is set for **Wednesday, September 23, 2015, at 2:30 p.m. in Courtroom A-1002.**

Dated:   September 4, 2015.

                                            BY THE COURT:

                                            s/ Wiley Y. Daniel
                                            WILEY Y. DANIEL,
                                            SENIOR UNITED STATES DISTRICT JUDGE